Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMEL ROBINSON,<br><br>                         Plaintiff,<br><br>                    vs.<br><br>ENTASIS THERAPEUTICS HOLDINGS INC., DAVID MEEK, MANOS PERROS, HEATHER BERGER, HEATHER PRESTON, DAVID C. HASTINGS, and HOWARD MAYER,<br><br>                         Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kimel Robinson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this stockholder action against Entasis Therapeutics Holdings Inc. ("Entasis" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Innoviva, Inc. ("Parent" or "Innoviva") as

a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 23, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Innoviva will acquire all the outstanding shares of Entasis common stock for $2.20 per share in cash. As a result, Entasis will become an indirect wholly-owned subsidiary of Innoviva.

3.      Thereafter, on June 7, 2022, Entasis filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Innoviva.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Entasis shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a)

the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Entasis, provided by Entasis to the Company's financial advisors MTS Securities, LLC ("MTS"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by MTS and provided to the Company and the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9.      Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Entasis stockholder.

10.      Defendant Entasis a clinical-stage biopharmaceutical company, focuses on the discovery, development, and commercialization of antibacterial products to treat serious infections caused by multidrug-resistant pathogens in the United States. Entasis is incorporated in Delaware and has its principal place of business at 35 Gatehouse Drive Waltham, Massachusetts 02451. Shares of Entasis common stock are traded on the NasdaqGM Stock Exchange under the symbol "ETTX."

11.      Defendant David Meek ("Meek") has been a Director of the Company at all relevant times.  In addition, Meek serves as the Chairman of the Board of Directors.

12.      Defendant Manos Perros ("Perros") has been a director of the Company at all relevant times. In addition, Perros serves as the Company's Chief Executive Officer ("CEO") and President.

13.      Defendant Heather Berger ("Berger") has been a director of the Company at all relevant times.

14.      Defendant Heather Preston ("Preston") has been a director of the Company at all relevant times.

15.     Defendant David C. Hastings ("Hastings") has been a director of the Company at all relevant times.

16.     Defendant Howard Mayer ("Richards") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 11 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Innoviva engages in the development and commercialization of pharmaceuticals in the United States and internationally. Shares of Innoviva common stock are traded on the NasdaqGS Stock Exchange under the symbol "INVA."

19.     Non-Party Merger Sub is a wholly owned subsidiary of Innoviva created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NasdaqGM Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     Entasis Therapeutics Holdings Inc., a clinical-stage biopharmaceutical company, focuses on the discovery, development, and commercialization of antibacterial products to treat serious infections caused by multidrug-resistant pathogens in the United States. Its lead product candidate is sulbactam-durlobactam (SUL-DUR), a novel IV antibiotic that is in Phase III clinical trial for the treatment of pneumonia and bloodstream infections caused by carbapenem-resistant Acinetobacter baumannii. The Company also develops Zoliflodacin, a novel orally administered molecule, which is in Phase III clinical trial for the treatment of uncomplicated gonorrhea; ETX0282CPDP, an oral drug that is in Phase I clinical trial for the treatment of urinary tract infections; and ETX0462, a drug candidate from NBP platform that is in pre-clinical stage for the treatment of multidrug-resistant gram-negative infections. The Company has a license and collaboration agreement with Zai Lab (Shanghai) Co., Ltd. for the development of durlobactam and SUL-DUR; and collaboration agreement with Global Antibiotic Research and Development Partnership for the development and commercialization of a product candidate zoliflodacin. Entasis Therapeutics Holdings Inc. was founded in 2015 and is headquartered in Waltham, Massachusetts. Entasis Therapeutics Holdings Inc. operates as a subsidiary of Innoviva, Inc.

24.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.   For example, in the March 3, 2022 press release announcing its 2021 Q4 and year end financial results, the Company highlighted updated Phase 3 trial results for its Zoliflodacin drug and also that the Phase 3 ATTACK registrational trial for sulbactam-durlobactam (SUL-DUR) had achieved all primary and secondary endpoints.

25.     Speaking on the positive results, CEO Defendant Perros said, "The incredible effort and commitment of our employees and partners in 2021 has resulted in a very productive year for Entasis."

26.     The promise and financial results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Entasis.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused Entasis to enter into the Proposed Transaction without providing requisite information to Entasis stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible. Notably, while the Recommendation Statement indicates that a "Special Transaction Committee" composed of independent directors was created to run the sales process, the Recommendation Statement fails to indicate if this Special Transaction Committee had the power to veto or approve potential strategic alternatives.

29.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Innoviva, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.  The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Innoviva, throughout the sales process, if any, would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

31.     On March 23, 2022, Entasis and Innoviva issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**BURLINGAME, Calif. and WALTHAM, Mass., May 23, 2022 (GLOBE NEWSWIRE)** -- Innoviva, Inc. (Nasdaq: INVA) ("Innoviva"), a diversified holding company with a portfolio of royalties and a growing portfolio of innovative healthcare assets, and Entasis Therapeutics Holdings Inc. (Nasdaq: ETTX) ("Entasis"), an advanced late-stage clinical biopharmaceutical company focused on the discovery and development of novel antibacterial products, today announced the companies have entered into a definitive merger agreement under which Innoviva is to acquire all of the outstanding shares of Entasis not already owned by Innoviva at a price of $2.20 per share in cash. Innoviva currently owns approximately 60% of the outstanding shares of Entasis common stock. The acquisition consideration values Entasis' equity at $113 million on a fully diluted basis. The transaction has been unanimously approved by the Innoviva and Entasis Boards of Directors.

"This acquisition will build upon our overall strategy to acquire differentiated, high-potential assets in attractive, yet often overlooked, disease areas where our capital and capabilities can make a difference," said Pavel Raifeld, Chief Executive Officer of Innoviva. "This transaction represents the next phase in our efforts to diversify our operations beyond our valuable royalty portfolio and will create significant value for patients, health systems and shareholders. We look forward to working with the Entasis team to advance sulbactam-durlobactam (SUL-DUR) and its broader novel antibacterial pipeline to address the urgent and serious threat posed by multidrug-resistant pathogens. Carbapenem-resistant Acinetobacter infections are an area of significant unmet medical need and, if approved by regulators, SUL-DUR could become the leading treatment for this disease."

"We are pleased that Innoviva recognizes the significant potential of our R&D pipeline and talented team, who have made great progress advancing our precision antibacterial programs to address serious unmet needs in treating multidrug-resistant Gram-negative infections," said Manos Perros, Chief Executive Officer of Entasis. "We believe that Innoviva is the ideal organization to maximize the value of our pipeline and accelerate our ability to bring novel antibacterial therapies to patients."

Established in 2015 as a spin-out from AstraZeneca, Entasis' unique pathogen-targeted approach has produced a robust clinical and pre-clinical pipeline of potential first- and best-in-class medicines for the treatment of multidrug-resistant Gram-negative bacteria, including lead asset SUL-DUR. In a Phase 3 registrational trial, SUL-DUR achieved all primary and secondary endpoints and a New Drug Application (NDA) is expected to be submitted to the U.S. Food and Drug Administration in the third quarter of 2022.

**Additional Transaction Details**

Innoviva has been a strategic investor in Entasis since 2020 and holds an equity stake of approximately 60% of the outstanding shares of Entasis common stock.

Pursuant to the terms and subject to the conditions of the merger agreement, Innoviva has agreed to purchase all of the issued and outstanding equity securities of Entasis not currently owned by Innoviva via a tender offer, followed by a merger, for consideration of $2.20 per share payable in cash. This represents a 50% premium to Entasis' closing price of $1.47 per share on January 31, 2022, the last date before Innoviva's original bid became public.

The transaction, which is subject to customary closing conditions, is anticipated to close in the third quarter of 2022.

***Potential Conflicts of Interest***

32.     The breakdown of the benefits of the deal indicates that Entasis insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Entasis.

33.     Notably, Company insiders, currently own large, illiquid portions of Company stock, stock option, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

|  | Number of Shares (#) | Cash Value of Shares ($) |
|---|---|---|
| **Executive Officers:** | | |
| Manoussos Perros, Ph.D. | 56,072 | 123,358 |
| David Altarac, M.D. | 17,572 | 38,658 |
| John Mueller, Ph.D. | 17,092 | 37,602 |
| Ruben Tommasi, Ph.D. | 39,596 | 87,111 |
| Matthew Ronsheim | 17,572 | 38,658 |
| Anna Diaz Triola | — | — |
| Kristie Wagner | — | — |
| Elizabeth Keiley | 17,572 | 38,658 |
| **Non-Employee Directors:** | | |
| David Meek | 22,000 | 48,400 |

| | | |
|---|---|---|
| Heather Preston, M.D. | — | — |
| Heather Berger, Ph.D. (formerly Heather Behanna) | 22,000 | 48,400 |
| Howard Mayer, M.D. | 22,000 | 48,400 |
| David Hastings | 22,000 | 48,400 |
| **All directors and executive officers as a group (13 persons)[1]** | **253,476** | **557,645** |

| | Shares Underlying Vested Company Options (#) | Weighted Average Exercise Price ($) | Aggregate Vested Company Option Payment ($)[1] | Shares Underlying Unvested Company Options (#) | Weighted Average Exercise Price ($) | Aggregate Unvested Company Option Payment ($)[1] | Company RSUs (#) | Aggregate Company RSUs Payment ($)[2] | Total Equity Award Consideration ($) |
|---|---|---|---|---|---|---|---|---|---|
| **Executive Officers:** | | | | | | | | | |
| Manoussos Perros, Ph.D. | 340,587 | 3.71 | — | 383,151 | 2.81 | — | 478,500 | 1,052,700 | 1,052,700 |
| David Altarac, M.D. | 30,208 | 4.94 | — | 112,099 | 2.88 | — | 150,000 | 330,000 | 330,000 |
| John Mueller, Ph.D. | 73,553 | 4.02 | — | 95,490 | 2.96 | — | 150,000 | 330,000 | 330,000 |
| Ruben Tommasi, Ph.D. | 61,531 | 4.07 | — | 118,492 | 2.86 | — | 150,000 | 330,000 | 330,000 |
| Matthew Ronsheim | 31,563 | 4.23 | — | 56,770 | 3.02 | — | 150,000 | 330,000 | 330,000 |
| Anna Diaz Triola | — | — | — | 100,000 | 2.49 | — | 125,000 | 275,000 | 275,000 |
| Kristie Wagner | — | — | — | 73,400 | 2.40 | — | 80,500 | 177,100 | 177,100 |
| Elizabeth Keiley | 30,208 | 4.94 | — | 40,625 | 3.66 | — | 150,000 | 330,000 | 330,000 |
| **Non-Employee Directors:** | | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| David Meek | 11,000 | 2.98 | — | 17,307 | 2.44 | — | 27,500 | 60,500 | 160,500 |
| Heather Preston, M.D. | — | — | — | — | — | — | — | — | — |
| Heather Berger, Ph.D. (formerly Heather Behanna) | 11,000 | 2.98 | — | 17,307 | 2.44 | — | 27,500 | 60,500 | 60,500 |
| Howard Mayer, M.D. | 11,000 | 2.98 | — | 12,500 | 2.44 | — | 27,500 | 60,500 | 60,500 |
| David Hastings | 11,000 | 2.98 | — | 26,583 | 2.44 | — | 27,500 | 60,500 | 60,500 |

34.     In addition, certain employment agreements with certain Entasis executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Manoussos Perros, Ph.D. | 2,823,095 | 1,052,700 | 16,060 | 3,891,855 |
| David Altarac, M.D. | 1,017,234 | 330,000 | 24,862 | 1,372,096 |
| Ruben Tommasi, Ph.D. | 1,325,279 | 330,000 | 35,378 | 1,690,657 |

35.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36.     Thus, while the Proposed Transaction is not in the best interests of Entasis, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Recommendation Statement**

37.     On June 7, 2022, the Entasis Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

38.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

  a.  Adequate information regarding the specific power of the Transactions Committee, including whether the committee had veto power over potential strategic alternatives;

  b.  Whether the terms of any confidentiality agreements entered during the sales process between Entasis on the one hand, and any other third party (including Innoviva), if any, on the other hand, differed from one another, and if so, in what way;

  c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Innoviva) throughout the sales process, if any, would fall away; and

  d.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation

of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Entasis's Financial Projections*

39.     The Recommendation Statement fails to provide material information concerning financial projections for Entasis provided by Entasis management and relied upon by MTS in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.     Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, MTS notes that it reviewed, "other internal documents relating to the history, current operations, and probable future outlook of the Company provided by Company Management, including management's cash flow projections."

41.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Entasis management provided to the Board and MTS. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

42.     With regard to *Company Projections* for Entasis prepared by Entasis management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in MTS analyses:

      a.   The Recommendation Statement fails to provide the underlying inputs, metrics, and assumptions used to calculate EBIT for years 2022-2035.

      b.   The Recommendation Statement also fails to provide the specific sub-metrics to determine future revenue; and

      c.   Additionally, the Recommendation Statement fails to provide the inputs and assumptions used to determine the changes in operating expenses.

43.    With regard to *Case Scenario 1* Projections for Entasis prepared by Entasis management, the Recommendation Statement fails to disclose the following:

      a.   The underlying inputs, metrics, and assumptions used to determine the risk adjustments for Royalties associated with SUL-DUR (US), SUL-DUR (Ex-US), and Zoliflodacin;

44.    With regard to *Case Scenario 2* Projections for Entasis prepared by Entasis management, the Recommendation Statement fails to disclose the following:

      a.   The underlying inputs, metrics, and assumptions used to determine the risk adjustments for Royalties associated with SUL-DUR, Zoliflodacin, and ETX0282; and

      b.   The specific line items used to calculate Total External Program Costs.

45.    The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46.    The Recommendation Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the alternative cases of projections rely.

47.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of MTS's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*

49.     In the Recommendation Statement, MTS describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

50.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine a weighted average cost of capital range of 18% to 20%;

    b.  The specific inputs and assumptions used to determine a revenue achievement factor range of 75% to 100%

    c.  The specific inputs and assumptions used for earnings, interest, taxes (including income tax expense), and changes in net working capital; and

    d.  The utilized range of discount rates and the underlying inputs and assumptions used to determine those discount rates.

51.     With respect to the *Public Trading Comparable Companies Analysis*, the Recommendation Statement fails to disclose the following:

    a.  The individual metrics for each company compared;

    b.  The underlying inputs, metrics, and assumptions used to determine Enterprise Value for each company compared;

    c.  The input used for the number of Pro Forma shares outstanding for the Company;

    d.  The consensus estimated peak revenue for each company compared; and

    e.  The specific Enterprise Value/Peak Sales for each company compared.

52.     With respect to the *Precedent Transactions Analysis* section, the Recommendation

Statement fails to disclose the following:

      a.   The value of each selected transaction compared;

      b.   The specific date on which each selected transaction closed;

      c.   The specific metrics for each selected Transaction;

      d.   The specific implied per Share value of each company compared;

      e.   The Company's net debt; and

      f.   The number of fully diluted shares outstanding for the Company.

53.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

54.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Entasis stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

55.    Plaintiff repeats all previous allegations as if set forth in full herein.

56.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

57.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

58.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

61.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

62.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Individual Defendants)

63.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

64.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

65.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

66.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

67.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

68.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

69.     Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

72.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

73.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Entasis's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

74.     The Individual Defendants acted as controlling persons of Entasis within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Entasis to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Entasis and all of its employees.  As alleged above, Entasis is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 10, 2022                                **BRODSKY & SMITH**

                              By:   */s/ Evan J. Smith*
                                    Evan J. Smith
                                    240 Mineola Boulevard
                                    Mineola, NY  11501
                                    Phone:  (516) 741-4977
                                    Facsimile (561) 741-0626

                                    *Counsel for Plaintiff*